IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOHN M. PICKENS, | ) |
|     Plaintiff, | ) |
| v. | )   17-cv-2205-TMP |
| AMY BETH DOWDY, | ) |
|     Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE**

Before the court is plaintiff John Pickens's Motion in Limine to Exclude Various Opinions and Testimony of Defendant's Expert James Rodney Feild, M.D., filed on July 20, 2018. (ECF No. 41.) Defendant Amy Beth Dowdy filed a response on July 25, 2018, and a supplemental response on July 31, 2018. (ECF No. 45, 53.) Pickens filed a reply on July 31, 2018. (ECF No. 55.) The court held a pretrial conference at which it heard oral argument on this and other motions on July 30, 2018, and August 1, 2018. (ECF No. 52, 58.) For the following reasons, Pickens's motion is GRANTED in part and DENIED in part.

**I. FINDINGS OF FACT**

On November 16, 2017, Dowdy disclosed to Pickens that she intended to call Dr. Feild as an expert witness. (ECF No. 45-1 at 1.) She described the scope of his possible testimony as follows:

> The subject matter upon which Dr. Feild is expected to testify includes all issues pertaining to the injuries and conditions allegedly sustained by Plaintiff in the automobile accident which forms the basis of this suit. This would include, but is not limited to, all issues of Plaintiff's health and physical condition before the subject automobile accident, the injuries alleged to have been sustained during and as a result of the subject automobile accident, medical treatment received by Plaintiff before and after the subject automobile accident, as well as his current condition. Dr. Feild may also testify as to any opinion offered by Plaintiff's expert(s).

(Id. at 1-2.) In addition to this description, Dowdy provided Pickens with a report by Dr. Feild in which he listed the information he reviewed in preparation for trial and explained that his opinions on the matter were as follows:

> Based on my analysis of these records, my opinion is that the motor vehicle accident that Mr. Pickens was involved in on March 14, 2015, should have caused him neck and arm pain as described in the records for 4 weeks or so. The surgery that he had on his neck on 2 occasions is unrelated to the MVA because the surgeries were done for degenerative joints in his neck. The duration of time between the MVA and surgery is medically too long to connect the two incidents. The MVA did not cause the arthritis for which surgery was done.
>
> I would assign no permanent physical impairment as related to the neck resulting from the MVA on March 14, 2015.

(Id. at 4-5.) On March 29, 2018, the parties deposed Dr. Feild. (Dr. Feild Dep, ECF No. 41-2.) Pickens moves to exclude excerpts

from this deposition that he claims are 1) not mentioned in Dr. Feild's expert report, 2) the product of improperly leading questions, and/or 3) unreliable.

## II. CONCLUSIONS OF LAW

### A. Testimony on Matters not Included in Dr. Feild's Report

Federal Rule of Civil Procedure 26 requires a party to supplement an expert report "if the party learns that in some material respect the [report] is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "[A] 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" R.C. Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 271 (6th Cir. 2010) (quoting Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 n.6 (7th Cir. 1998)). The duty to supplement extends not only to information included in an expert's report, but also "to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). "[C]hanges in the opinions expressed by the expert whether in the report or at a subsequent deposition are subject to a duty of supplemental disclosure under subdivision (e)(1)." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. A party

that fails to provide such supplementation "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When determining whether an omitted or late disclosure was substantially justified or harmless, courts consider the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

<u>Abrams v. Nucor Steel Marion, Inc.</u>, 694 F. App'x 974, 982 (6th Cir. 2017) (quoting <u>Howe v. City of Akron</u>, 801 F.3d 718, 748 (6th Cir. 2015)). Pickens argues that Dr. Feild failed to include in his report any mention of Pickens's myasthenia gravis diagnosis, screenshots of Pickens's 2010 and 2015 MRIs, the chosen course of treatment by Pickens's treating physician, Jason Weaver, M.D., or the average recovery rates for individuals injured in motor vehicle accidents.

1. <u>Myasthenia Gravis</u>

During his deposition, Dr. Feild discussed myasthenia gravis several times. He described the condition and opined on the symptoms that led to Pickens's diagnosis. (Dr. Feild Dep. 11:15-20, 11:25-12:2, 67:17-69:14.) Because Dr. Feild did not mention myasthenia gravis in his report or supplement his report to clarify

his position on this matter, Pickens seeks exclusion of all references in Dr. Feild's deposition to Pickens's myasthenia gravis diagnosis. Dowdy argues that these sections of the deposition are admissible because the testimony is being offered to rebut portions of Dr. Weaver's deposition testimony that Dowdy elicited from Dr. Weaver while cross examining him.

The court finds that all references to myasthenia gravis should be excluded from Dr. Feild's deposition. Regarding Dowdy's arguments about the rebuttal purpose of the deposition, she has not cited to any case law to support her argument. Furthermore, parties retain their disclosure obligations even when they present evidence solely to rebut another party's evidence. See Fed. R. Civ. P. 26(a)(2)(D)(ii). Thus, the court finds that the five-factor test weighs in favor of exclusion. The first factor weighs toward exclusion — Pickens experienced unfair surprise during the deposition because Dr. Feild's report made no mention of myasthenia gravis. That Dowdy brought the matter to Dr. Weaver's attention does not eliminate the surprise because the cross examination of Dr. Weaver did not put Pickens on notice that Dr. Feild also intended to testify about myasthenia gravis. The second factor weighs toward exclusion — the opportunity to cross examine Dr. Feild did not cure the surprise because Pickens did not have adequate time to prepare to cross examine Dr. Feild on this topic. The third factor weighs against exclusion — considering that Dr.

Weaver's testimony on myasthenia gravis is admissible, it is unlikely that discussion of the matter would seriously disrupt the trial. The fourth factor weighs toward exclusion — it is unclear how the contested testimony could be of value to the defendant's case given that Dr. Feild does not opine that myasthenia gravis was an alternate reason for the treatment Pickens received. The fifth factor weighs toward exclusion — Dowdy's explanation for her failure to disclose, that there were only ten days between Dr. Weaver's deposition and Dr. Feild's deposition, is not satisfactory because Dowdy does not explain why that was too little time.

Beyond Dr. Feild's failure to discuss myasthenia gravis in his report, there are two other reasons for excluding this testimony. First, the irrelevance of this testimony, touched on in the preceding fourth-factor analysis, is on its own a sufficient reason for excluding the testimony. Dr. Feild never opined that Pickens's myasthenia gravis caused him to receive the medical treatment at issue in this. Instead, he testified that Pickens was starting to feel the effects of the myasthenia gravis around the time of his surgery. (Dr. Feild Dep. 68:19-23.) Second, a good portion of Dr. Feild's discussion of myasthenia gravis has no reliable scientific basis. See Fed. R. Evid. 702 ("A witness who is qualified as an expert . . . may testify if: . . . the testimony is the product of reliable principles and methods . . . ."); Daubert

v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993) (requiring that "all scientific testimony . . . is . . . reliable"). Indicators of reliability include evidence that a theory has been tested, subject to peer review, and is generally accepted by the scientific community. See Daubert, 509 U.S. at 593-94. Dr. Feild supported his opinion that Pickens was already feeling the effects of myasthenia gravis at the time of his surgery by testifying as follows:

> The radiologist describes a uvula, which the thing that hangs down in the back of your throat, was really low. And it was dropped down toward the larynx. And usually it's high and so forth. And he complained that he had a grape in his throat. And I suspect if someone, or maybe somebody already has, someone took 100 myasthenia patients and if you had X-rays on them you probably would see some of them that had the uvula dropped down. And that may be a finding that would alert you to the problem.

This testimony has none of the indicators of reliability. For these reasons, the court GRANTS this part of Pickens's motion and finds that the excerpts of Dr. Feild's testimony located at 11:15-20, 11:25-12:2, and 67:17-69:14 on the deposition transcript should be excluded.

2. MRI Screenshots

During his deposition, Dr. Feild relied on copies of screenshots that he took from 2010 and 2015 MRIs of Pickens. (Dr. Feild Dep. 21:16-25:23, 52:11-53:25.) Pickens argues that this testimony should be excluded because Dr. Feild did not indicate in

his report that he would be relying on screenshots from these MRIs. Dowdy argues that Dr. Feild's report stated he had reviewed records from the facilities responsible for requesting and completing the MRIs. The court finds that this testimony is admissible because Pickens was well aware of the existence of the MRIs. Thus, the court DENIES this part of Pickens's motion.

3. Dr. Weaver's Treatment of Pickens

During his deposition, Dr. Feild testified at great length about treatment decisions by Dr. Weaver that he would not have made, alternative forms of treatment, relative costs of the treatments, and possible medical consequences from the treatment Pickens received. (Dr. Feild Dep. 55:4-63:6.) Pickens asks the court to exclude this testimony on the grounds that Dr. Feild's report did not indicate he would discuss these issues. Dowdy argues that the court should allow this testimony because all of these matters were raised in her initial disclosures and, alternatively, she elicited the testimony to rebut Dr. Weaver's testimony.

The court finds that the generalized description in Dowdy's initial disclosure about the issues Dr. Feild might discuss is not a satisfactory substitute for the detailed report that Fed. R. Civ. P. 26(2)(B) requires of expert witnesses. Therefore, Dowdy's arguments on this point do not aid her. With certain exceptions addressed below, Dr. Feild's testimony about Dr. Weaver's

treatment, the alternative treatments available, and the costs of these treatments is material information that should have been included in his report. Applying the five-factor test, the court finds that, for many of the same reasons that the omission of myasthenia gravis was not harmless or substantially justified, neither was the omission of this information.

Furthermore, the court notes that the use for which Dowdy offers this testimony, to show that Pickens's failed to mitigate damages, presents several reliability issues. One issue is that Dr. Feild has not demonstrated that he knows the customary charges for the treatment Pickens received. See Dedmon v. Steelman, 535 S.W.3d 431, 438 (Tenn. 2017). Another issue is that Dr. Feild did not provide a reliable basis for his opinion that the alternative treatment he discussed is less expensive than the one that Pickens received.

Nonetheless, the court finds that one excerpt from this contested section of the testimony is admissible. The testimony located at 56:7–57:24 is admissible because it focuses entirely on the structure of the spine and the surgery that Dr. Weaver performed on Pickens — topics that Dr. Feild is qualified to discuss and were adequately mentioned in Dr. Feild's report. Therefore, the court GRANTS this portion of Pickens's motion in part and finds that the excerpts of Dr. Feild's testimony located

at 54:25–56:7[1] and 57:25–63:6 on the deposition transcript should be excluded.

   4.   <u>Average Recovery Rates for Individuals Injured in Motor Vehicle Accidents</u>

In response to a question about the basis for the statement in his report that Pickens should have recovered from the motor vehicle accident in four weeks, Dr. Feild testified,

> Well, you see people that are involved in rear-end collisions. You know, I was right down the street here, somebody hit me in the back . . . Anyway, hit me in the back, and they have Volvo, the company Volvo introduced these pads that go on the back of your head to keep you from having flexion, extension injuries. So if it hits you in the back and you go back like that. But you hit the pad so you don't have what used to be called whiplash.
>
> And then if you hit something then your neck goes forward. So there wasn't — it wasn't a very serious, looking at the pictures, my analysis of the truck, it wasn't — a bumper was dislodged. But you know, that's why it's there. So and there was nothing broken. And for — he walks in the emergency room and says I have an achy pain. And then two months, three months go by he doesn't have any pain. You just can't say ah, that's the cause of everything that happens to him for the rest of his life is this wreck. You give it time.
>
> Take the wreck out of it and take a football player that's, or a person that slips down and hurts themselves, and they are 70 years old and they have pain in their back. You treat it conservatively without operating on it, in about 60 to 90 days it's gone. And that's, the body heals it. And the body takes care of the problem. Unless they fracture something and that's where he is.
>
> He was in a minor wreck, minor damage. And we talked about his not going to the emergency room.

---

[1]To reduce jury confusion, the court has expanded the length of the exclusion slightly beyond what Pickens requests.

-10-

> Immediately walks in the emergency room, he stays an hour and a half or so, walks out. And then, you know, and nothing is broken. In about 60 to 90 days it's over. That's out of the picture.

(Dr. Feild Dep. 65:8-10, 65:16-22.) In addition to arguing for exclusion due to failure to disclose, Pickens also argues that this testimony is not responsive and not reliable because it is not grounded in science and includes analysis of issues outside of Dr. Feild's specialization. Dowdy has stated that she intends to exclude the portions of the testimony about Dr. Feild's personal experience with a motor vehicle accident located at 65:9-20. However, the stricken testimony does not resolve Pickens's concerns.

This testimony contains several material statements that were not raised in Dr. Feild's report. For instance, Dr. Feild's opinion that Pickens should have recovered in sixty to ninety days differs greatly from his report that the recovery time should have lasted for four weeks. Applying the five-factor test, the court finds that, for many of the same reasons that the omission of myasthenia gravis was not harmless or substantially justified, neither was the failure to supplement the report with this information. Additionally, the testimony lacks reliability, consisting almost entirely of assertions of fact that lack any scientific support. Finally, the testimony is both nonresponsive and confusing. Therefore, the court GRANTS this part of Pickens's

motion and finds that the excerpt of Dr. Feild's testimony located at 65:4–67:16 on the deposition transcript should be excluded.

**B.   Testimony Resulting from Leading Questions**

Pickens claims that the deposition testimony found at 25:12–25:23, 44:20-24, and 54:1 should be stricken as the result of leading questions.  The court DENIES this part of Pickens's motion.

**C.   Unreliable Testimony**

As mentioned above, expert testimony must be relevant and reliable.  See Fed. R. Evid. 702; Daubert, 509 U.S. at 589.  Pickens argues that excerpts from Dr. Feild's testimony discussing typical treatment approaches and recovery rates for individuals injured in motor vehicle accidents, the evidence substantiating Pickens's complaints of pain, and possible factors exacerbating Pickens's symptoms are unreliable and should be excluded.  (Dr. Feild Dep. 33:19-34:15, 35:17–36:3, 50:1–51:17.)  Dowdy argues that these excerpts are reliable because "there can be no doubt but that Dr. Feild's testimony is based upon his review of records and his own scientific knowledge, training and [fifty-seven years of] experience."  (ECF No. 45 at 8.)

   1.   Typical Treatment Approaches to Individuals Injured in Motor Vehicle Accidents

In response to a question about what one expects to see in the medical records of an individual who suffered a disk injury in a car accident, Dr. Feild gave the following answer:

> Well, if somebody is in a wreck and they think they are hurt, they don't wait five days to go to the emergency room. They are in the emergency room. And, you know, they complain of neck pain at the scene. And the fire department puts them in a neck brace and lifts them onto the stretcher and carries them to the emergency room. And they have an X-ray made, and examined very carefully until they rule out the fracture of the neck.
>
> And they don't come in complaining of an achy pain five days later. But they, if they have it right out here, you know, nothing, if they block traffic, you can do everything and get them in there and carry them to the emergency room.

(Dr. Feild Dep. 33:22-34:10.)

Dr. Feild's fifty-seven years of experience do not endow his entire testimony with reliability. The individual opinions he expressed must be supported with indicators of reliability, see Daubert, 509 U.S. at 593-94, and such indicators are lacking from this section of his testimony. Therefore, the court GRANTS this part of Pickens's motion and finds that the excerpt of Dr. Feild's testimony located at 33:19-34:15 on the deposition transcript should be excluded.

2. Evidence Supporting Pickens's Complaints of Pain

Much of the debate surrounding Dr. Feild's testimony about the evidence supporting Pickens's complaints of pain has already been resolved. Dowdy has agreed to strike portions of testimony beginning with the words "It's what" on 35:17 and ending at 36:1. The remaining testimony at issue is Dr. Feild's statement, "That's a contemporary — there's nothing here to substantiate the

complaint." (Dr. Feild Dep. 36:2-3.) This testimony is the conclusion for preceding testimony located at 35:11-17 to which Pickens does not object. As the preceding testimony is reliable, this conclusion is also reliable. Therefore, the court DENIES this part of Pickens's motion.

3. Possible Factors Exacerbating Pickens's Symptoms

In this contested excerpt of testimony, the attorney asked Dr. Feild a series of questions about the factors contributing to Pickens's neck pain and numbness. (Dr. Feild Dep. 50:1–51:17.) The standard of certainty upon which the attorney relied appeared to vary. At times the attorney asked "what kinds of things could have caused" the symptoms and at times asked whether Pickens "[k]eeping his neck in a flexed position, is something that within a reasonable degree of medical certainty" caused the symptoms. (Dr. Feild Dep. 50:1, 51:9–11.) Dr. Feild responded that arthritis would have caused these symptoms and that flexion could have exacerbated the arthritis. (Dr. Feild Dep. 50:12, 51:15-17.)

Pickens argues that the court should exclude this testimony because it lacks indicators of reliability, and alternatively, because it is speculative. Dowdy has agreed to strike the testimony located at 50:19-51:2, but this does not resolve any of the issues that Pickens has raised. Regarding Pickens's first argument, the court finds that many aspects of this testimony indicate its reliability. In the preceding testimony, Dr. Feild

spent a great deal of time describing Pickens's symptoms and various ways that the medical records indicated Pickens eased and exacerbated those symptoms. (Dr. Feild Dep. 36:15-49:25.) His theories about additional factors causing or exacerbating these symptoms build upon this prior testimony and are well within the issues that he raised in his report and his area of medical expertise. (ECF No. 41-1.)

When arguing that the testimony is speculative, Pickens relies on several cases from Tennessee state courts, placing special emphasis on Hunter v. Ura, 163 S.W.3d 686, 703-04 (Tenn. 2005). In Hunter, the Tennessee Supreme Court approved the exclusion of excerpts of testimony by a defendant's expert witness that focused on "'possible' theories or causes" instead of probable causes. Id. at 704. The Court held that such testimony is unreliable because testimony that something is "possible" is too speculative to substantially assist the trier of fact. Id. Pickens points to the multiple uses of the word "could" in the questions and answers as proof that the testimony is speculative. However, while the Sixth Circuit agrees that "an expert opinion [must] express a probability, which is more than a mere possibility," it also notes that "there is no 'magic words' test" and merely using "the phrase ['with a reasonable degree of medical certainty'] . . . does not make a causation opinion admissible." Johnson v. Memphis Light Gas & Water Div., 695 F. App'x 131, 136-

37 (6th Cir. 2017) (alteration in original) (quoting Thompson v. Underwood, 407 F.2d 994, 997 (6th Cir. 1969); Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 671 (6th Cir. 2010)).

Regardless of the precise words used, an expert witness's testimony is not speculative if it communicates that the expert's "conclusion is more likely than not true." Id. at 137. Here, the court finds that, taken in context with the preceding testimony, Dr. Feild's answer at 50:8-14, "We saw the films of his arthritis in his neck. And so that would be the suspect right there, the first. Unless something else happened," indicates that he was testifying about a cause of Pickens's pain that he believed more likely than not to be the true cause. In addition, Dr. Feild's testimony at 51:15-17 is not an opinion on the actual cause of Pickens's pain but rather a permissible response to a hypothetical. For these reasons, the court DENIES this part of Pickens's motion.

### III. CONCLUSION

For the foregoing reasons, the Pickens's motion to exclude is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 2, 2018
Date